IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN M. GRUSSMARK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> GLAXOSMITHKLINE CONSUMER ) <br> HEALTHCARE, L.P., ) <br> ) <br> Defendant. ) | No. 04 C 0772 <br><br> Judge Mark Filip |

## **Memorandum Opinion and Order**

Plaintiff Stephen Grussmark ("Plaintiff" or "Grussmark") filed this lawsuit against Defendant GlaxoSmithKline Consumer Healthcare, L.P. ("Defendant" or "GSK"), alleging that GSK has infringed Grussmark's United States Patent No. 5,979,706 ("the '706 patent") by producing and selling GSK's "Floss 'N' Cap" product. (D.E. 1.)[1] The case is before the Court on GSK's motion for summary judgment of non-infringement ("Motion"). (D.E. 24.) For the reasons stated below, the Motion is granted.

### I. **Background**

A. Lack of Compliance With Local Rule 56.1

The Court takes the facts from the parties' respective statements submitted under Local Rule 56.1 ("L.R. 56.1"). L.R. 56.1 requires that statements of facts contain allegations of material fact, and the factual allegations must be supported by admissible record evidence. *See* L.R. 56.1(a); *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit

---

[1] The various docket entries in this case are designated "D.E. __."

teaches that a district court has broad discretion to require strict compliance with L.R. 56.1.[2] *See, e.g., Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. *See, e.g., Malec*, 191 F.R.D. at 583 ("[A] movant's 56.1(a) statement should contain *only* factual allegations. It is inappropriate to allege legal conclusions." (emphasis in orignal)); *id.* ("Factual allegations not properly supported by citation to the record are nullities."). Additionally, where a party has improperly denied a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. *See* L.R. 56.1(a), (b)(3)(B); *see also Malec*, 191 F.R.D. at 584 (failure to adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials justifying denial, is equivalent to admission).

The Court notes that Grussmark, in particular, has substantially failed to comply with the strictures of L.R. 56.1. For example, Grussmark attempts to dispute certain statements in Defendant's Statement of Material Facts as to Which There Exists No Genuine Issue ("Def. SF") (D.E. 26) without providing any record support for his responses. (*See, e.g.*, Counterstatement of Material Facts: Resp. to Def.'s Statement of Material Facts ("Pl. Resp.") (D.E. 36) ¶¶ 7, 9, 11, 12, 14.) Certain responses argue that the quotations excerpted by GSK do "not accurately and

---

[2] *See generally SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1333 (Fed. Cir. 1999) ("[W]hen considering appeals from a district court in patent cases we apply our own circuit law, except that with respect to purely procedural matters that are subject to local variation, we will customarily follow local law of the circuit in which the district court sits.").

completely reflect the complete circumstances and statements made by Dr. Grussmark or his counsel in the prosecution of the '706 patent" (*id.* ¶¶ 7, 9, 11), but Grussmark does not point the Court to any portions of the record which support that argument. Other responses simply state "Disputed" with nothing more. (*Id.* ¶¶ 12, 14.) The Court deems all these statements admitted for the purposes of summary judgment. *See* L.R. 56.1(b)(3)(B); *accord, e.g., Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931, 934 n.1 (7th Cir. 2003); *Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."); *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 223 F.3d 524, 528-29 (7th Cir. 2000) (affirming district court's decision to strike entire response to movant's statement of facts rather than searching for individual, proper statements; holding that "the purpose of [the predecessor rule of L.R. 56.1]—to require the parties to identify the disputed issues in a concise format—would be defeated if the court were required to wade through improper denials and legal argument in search of a genuinely disputed fact"). Grussmark also fails to provide record support for several of his own statements of fact. (*See, e.g.,* Pl.'s Statement of Material Facts as to Which There Is No Genuine Issue ("Pl. SF") (D.E. 36) ¶¶ 15-18, 27, 35; Pl.'s Suppl. Counterstatement of Material Facts ("Pl. Supp. SF") (D.E. 50) ¶¶ 36, 37.) Without record support, the Court will not consider those statements. *See Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002); *Malec*, 191 F.R.D. at 583 ("Factual allegations not properly supported by citation to the record are nullities.").

GSK, too, has failed to comply with L.R. 56.1 on at least two occasions. The Court has reviewed the record citations for paragraphs 8 and 13 of GSK's statement of facts and finds that the record does not support these statements. (*See* Def. SF ¶¶ 8 (citing Def. Ex. I (Grussmark

Dep.) at 99:9-15), 13 (citing Def. Ex. P (Abbott Dep.) at 73:3-22).) Thus, despite Grussmark's failure to offer proper evidentiary support for his denials, the Court will not consider these statements of fact because these other statements lack evidentiary support. *See Metro Life Ins. Co.*, 297 F.3d at 562.

B. Facts

Grussmark is the owner of the '706 patent for a device titled "Combination Dental Floss Dispenser and Stand-Up Toothpaste Container." (Def. SF ¶ 5; *see also* Def. Ex. N ('706 patent).) The Background section of the '706 patent states:

> Numerous devices have been developed to remind people to floss during the brushing process. For example, dental floss dispensers have been attached to toothpaste containers in various forms. . . . [Other patented] devices show dental floss dispensers attached to "standard" type toothpaste tube containers and "pump" type toothpaste tube containers.
>
> The toothpaste industry had now developed a "new" flexible stand-up tube toothpaste container with a flip-open cap. This new stand-up container is significantly different from other containers because it is made from flexible plastic material and because the cap is constructed to form a base enabling the container to stand in an upright position.

('706 patent, col. 1, lines 25-39.) In the Summary of the Invention section of the '706 patent, Grussmark described his invention as "a combination dental floss dispenser and stand-up toothpaste container in which the dispenser is attached to the flip-open cap or screw-on cap of a stand-up container such that the container, cap, and dispenser are adapted to stand in the upright position on the dispenser." (*Id.*, col.1, lines 47-51.) In the Description of the Invention, the tube is described as having "a soft plastic elongated body." (*Id.*, col. 3, lines 26-27.) The Description also includes the following statement: "The tube 12 and the cap 14 are balanced and adapted to stand in the upright position on the base plate 40 of the second part of the cap 14 when placed on a substantially horizontal surface." (*Id.*, col. 4, lines 7-10.)

4

The disputed claims of the '706 patent claim, in pertinent part, the following:

1. A combination of a dental floss dispenser and a stand-up squeezable toothpaste container,

    said stand-up toothpaste container comprising:

    flexible tube means for storing toothpaste and a nozzle means at one end for selectively discharging toothpaste when a squeezing pressure is applied to said tube means;

    * * * *

3. A combination of a dental floss dispenser and a stand-up squeezable toothpaste container,

    said stand-up toothpaste container comprising:

    flexible tube means for storing toothpaste and a nozzle means at one end for selectively discharging toothpaste when a squeezing pressure is applied to said tube means . . . .

('706 patent, col. 7, lines 20-26; *id.*, col. 7, lines 55-61.)[3]

During the prosecution of the patent, Grussmark made several arguments regarding his invention.[4] For example, in seeking to overcome a rejection of pending claim 21 in his

---

[3] Claim 2 is dependent upon claim 1.

[4] After briefing on Defendant's motion for summary judgment of non-infringement was completed, Defendant filed a Motion to Clarify Plaintiff's Submission of Objects. (D.E. 41.) This motion was apparently in response to Plaintiff's submission of two objects to the Court—which were submitted in response to Defendant's request in its motion for summary judgment that Plaintiff "submit its prototype to the Court so that its characteristics will be readily apparent." (D.E. 25 at 4.) (Defendant is of the view that a review of its prototype will reinforce Defendant's position and further demonstrate the propriety of summary judgment.) The Court does not find any reference in the official district court docket to the two objects submitted by Plaintiff, but the Court is in possession of two objects, which are as described by Defendant it its motion to clarify: a combination of a dental floss dispenser and a Colgate "Clean & Easy Stand-Up Tube" (what is identified as "P-1"), and a combination of a dental floss dispenser and a "pump" type toothpaste container (what is identified as "P-2"). (*See* D.E. 41 ¶¶ 2, 3.)

The parties' briefing on the motion to clarify is devoted substantially to whether Plaintiff

continuation application (which the examiner held was anticipated by the prior art of another patent, U.S. Patent No. 5,076,302 (referred to in the prosecution history, as well as here, as "Chari")), Grussmark argued that his claimed invention was distinct from Chari because the Chari patent did not incorporate a "stand-up squeezable toothpaste container." (Def. Ex. K at 10 (cited by Def. SF ¶ 9).) Grussmark distinguished the Chari container as "one where the container walls may be rolled up . . . for the purpose of forcing toothpaste from the container." (*Id.*) To

---

submitted one, both, or neither of the objects to the patent examiner during the prosecution of the '706 patent. (*See* D.E. 41 at 2; D.E. 43 at 2; D.E. 44 at 2.) In its reply brief, Defendant clarifies that the relief it seeks from the Court is to "clarify which of the two objects submitted by Plaintiff embodies Plaintiff's patent claims and recognize P-1 as the prototype of his claimed invention." (D.E. 44 at 3.) Defendant argues that P-1 is the prototype shown to the patent examiner, but Grussmark points to deposition testimony where he testifies that he does not recall discussing samples of the claimed invention with the patent examiner and does not recall whether he brought any items with him to the meeting. (D.E. 43, Ex. C (Grussmark Dep.) at 107-108.)

Although the Court need not resolve this matter to adjudicate the summary judgment motion, as explained below, the Court notes initially that the record appears to substantially support GSK on this matter: Mr. Grussmark can only recall making the P-1 sample (*id.* at 110), which strongly suggests that if he brought any sample at all with him to meeting (Grussmark does not recall whether he even did this), it was the only sample that Grussmark recalls making (*i.e.*, P-1). Nonetheless, the Court need not consult the objects submitted (as GSK proposes will aid its cause) to resolve the motion for summary judgment. The Court was able to construe the claims of the patent by looking to the intrinsic evidence, including the specification and the prosecution history (which neither party argues includes any objects submitted to the patent examiner during an interview with Grussmark), as precedent instructs. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). That process led to the conclusion that, in this case, the claim term "stand-up toothpaste container" was framed so as to exclude a toothpaste container that did not retain its shape, which is disabling to Mr. Grussmark's case. Neither party argues that the intrinsic record includes any object Grussmark showed the examiner, so any such argument is waived. Moreover, the idea that the intrinsic record in this case could include such an object would seem to be in tension with the public notice function of the intrinsic record of a patent, whereby a putative inventor can review the record remotely and determine whether he or she has a potentially patentable invention. *See generally Springs Window Fashions LP v. Novo Indus., LP*, 323 F.3d 989, 995 (Fed. Cir. 2003); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("The claims, specification, and file history . . . constitute the public record of the patentee's claim, a record on which the public is entitled to rely."). Accordingly, the motion for clarification is denied as moot.

the contrary, Grussmark argued, a "stand-up toothpaste container . . . will retain its shape even after discharging any part of the contents of the container." (*Id.*)

During prosecution, Grussmark sought patent protection in proposed claim 22 for a dental floss dispenser attached to a squeezable tube that was not limited to a "stand-up" tube, but that claim was rejected. (Def. SF ¶ 10.) In his appeal to the Board of Patent Appeals and Interferences, Grussmark argued that the "stand-up" tube in his invention was distinct from the prior art "because it is made from a flexible plastic material which retains its shape after discharging any part of the contents of the container." (*Id.* ¶ 11.)

GSK's Floss 'N' Cap (which the Court observes to be a toothpaste tube with a dental floss dispenser attached to its cap (*see* D.E. 22)) is able to stand up on a counter when placed on its cap. (Pl. SF ¶ 19.) Defendant has adduced undisputed evidence that the Floss 'N' Cap product does not retain its shape after discharging its contents. (Def. SF ¶ 12.) It is what is known in the industry as a "dead fold" product that, as the product gets used up, will remain flat if squeezed. (Def. SF ¶ 14.) The tube can be rolled up (*id.* ¶ 12), but it will not stay entirely rolled due to the effect of a plastic layer in the tube (Pl. SF ¶ 25).

## II. Legal Standards

Summary judgment is appropriate in a patent case, as in any other case, where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998). Summary judgment is proper where, based on the evidence put forward by the nonmovant, no reasonable jury could find that the alleged infringer's product or process infringes the patent. *See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d

1370, 1376 (Fed. Cir. 2004); *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997).

"The determination of infringement is a two-step analysis: (1) claim construction to determine the scope and meaning of the claims asserted to be infringed, and then (2) a determination of whether the properly construed claims encompass the accused device." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1315 (Fed. Cir. 1999); *accord Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1302 (Fed. Cir. 2004). The patentee has the ultimate burden of proving that the accused device meets each and every element of the asserted claims, either under literal infringement or the doctrine of equivalents. *See Deering Precision Instruments, LLC v. Vector Distr. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003); *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985). Summary judgment of noninfringement is thus proper "where there is no genuine issue as to whether the accused device lacks a single claim element or its equivalent." *Cannon Rubber Ltd. v. First Years Inc.*, No. 03 C 4918, 2004 WL 2533720, at *2 (N.D. Ill. Sep. 28, 2004) (citing *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003)); *see also Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1554 (Fed. Cir. 1998) (absence of a single element in the accused device precludes a finding of infringement).

### III. Analysis

GSK argues that summary judgment is appropriate because the proper interpretation of "stand-up toothpaste container," as used in the '706 patent, excludes devices, such as the Floss 'N' Cap, which do not retain their shape when the toothpaste is discharged. Grussmark counters

that "stand-up toothpaste container" is not so limited, and the Floss 'N' Cap, as a toothpaste container which physically stands up on a counter, infringes the '706 patent. Because, as explained below, the Court construes the claim term "stand-up toothpaste container" to specifically exclude a toothpaste container that does not retain its shape, and the undisputed evidence before the Court demonstrates that the Floss 'N' Cap does not retain its shape after discharge of its contents (*see* Def. SF ¶ 12), the Court finds that summary judgment of non-infringement is proper.

A.  Claim Interpretation

As precedent instructs, the Court begins its interpretation of the claims in the '706 patent by looking to the language of the patent itself. *See Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000); *Desper Prods.*, 157 F.3d at 1333. "As a starting point, the court gives claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art." *Hockerson-Halberstadt*, 222 F.3d at 955. Here the relevant claim language recites a "stand-up toothpaste container comprising flexible tube means for storing toothpaste." ('706 patent, col. 7, lines 22-23; *id.*, col. 7, lines 57-58.) The analysis focuses on the term "stand-up toothpaste container."[5] The ordinary and accustomed meaning of a "stand-up toothpaste container" is simply a toothpaste container that stands upright on a flat surface. (*See, e.g.*, Pl. SF ¶¶ 21, 22.)

While the ordinary and accustomed meaning of a term "initially serves as a default meaning" in the patent, a "patentee may act as a lexicographer and ascribe a different, or

---

[5] Grussmark argues at length in his response brief about the meaning of "flexible" in the '706 patent. If, however, the Floss 'N' Cap is not a "stand-up toothpaste container" as recited by the patent, whether the product contains a "flexible tube means" is irrelevant.

9

modified, meaning to the term." *Hockerson-Halberstadt*, 222 F.3d at 955 (citing, *inter alia*, *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)). The Court, thus, "must examine a patent's specification and prosecution history to determine whether the patentee has given the term an unconventional meaning." *Id.* (citing, *inter alia*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (7th Cir. 1995). The Court must assess the totality of the prosecution history, including arguments made to overcome or distinguish references, to determine whether a patentee relinquished a particular claim construction. *See Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1326 (Fed. Cir. 2002). A disclaimer in the prosecution history will be held to narrow a claim only where the disclaimer was both clear and unmistakable. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir 2003).

In analyzing the prosecution history of the '706 patent, the Court finds that Grussmark used the term "stand-up toothpaste container" to mean something more than merely a toothpaste container which is capable of standing up. In response to Grussmark's continuation application for the '706 patent, the patent examiner rejected proposed claim 21, stating, "In Fig. 5, Chari shows a combination dental floss dispenser and stand-up toothpaste container according to claim 21." (Def. Ex. F at 3.) In Grussmark's attempt to overcome the rejection of this claim, Grussmark specifically distinguished his "stand-up toothpaste container" from the Chari container which has walls that "may be rolled up . . . for the purpose of forcing toothpaste from the container" because that kind of container "will be unstable due to the offset weight of the

10

rolled portion [which will] prohibit the container and dispenser from standing up on end." (Def. Ex. K at 10.) In contrast, the "stand-up toothpaste container" of the '706 patent is one which "will *retain its shape* even after discharging any part of the contents of the container." (*Id.* (emphasis added).)[6]

Grussmark made other statements during prosecution consistent with his disclaimer related to proposed claim 21. Grussmark appealed to the PTO's Board of Patent Appeals and Interferences the rejection of several claims in the application. (*See* Def. Ex. M.) In Grussmark's Summary of the Invention in that appeal, Grussmark specifically described what he called "a 'stand-up' type squeezable toothpaste container having either a flip-open cap or a screw-on cap." (*Id.* at 3.) According to Grussmark, "The stand-up container is different from previous containers because it is made from a flexible plastic material which *retains its shape* after discharging any part of the contents of the container and because the container is suitably balanced to stand in an upright position on the base of the flip-open or screw-on cap without easily tipping over." (*Id.* (emphasis added).) These statements are unambiguous and are amenable to a single interpretation: Grussmark's invention is different because it retains its shape. *Compare Cordis Corp. v. Medtronic AVE Inc.*, 339 F.3d 1352, 1360 (Fed. Cir. 2003) (no

---

[6] The Court rejects Grussmark's argument that these statements are inapplicable because proposed claim 21 asserts a "stand-up *squeezable* toothpaste container," which requirement is not present in claims 1 through 3 at issue. (*See* D.E. 49 at 2-3.) First, when the patent examiner first rejected claim 21 as being anticipated by Chari, the claim recited a "stand-up toothpaste container." (*See* Pl. Ex. 3 at Bates GSK 003653.) Grussmark amended the claim to add "squeezable," but the claim was nonetheless rejected. Second, Grussmark apparently used the terms "stand-up squeezable toothpaste container" and "stand-up toothpaste container" interchangeably (*see, e.g.*, Def. Ex. K at 10-11; '706 patent, col. 7, lines 20-22 ("A combination of a dental floss dispenser and a stand-up squeezable toothpaste container, said stand-up toothpaste container comprising . . . .")), and the Court finds no reason to believe that Grussmark's disclaimers do not apply to "stand-up toothpaste container" throughout the patent.

11

clear and unmistakable surrender where purported disclaimer by patentee was "amenable to multiple reasonable interpretations").

The Court finds that Grussmark's statements constitute a clear and unmistakable disclaimer as to what type of container is *not* a "stand-up toothpaste container." Specifically, Grussmark clearly and unmistakably disclaimed from the definition of "stand-up toothpaste container" a toothpaste container, like the container pictured in Chari Figure 5, which has walls that do not retain their shape when the toothpaste is discharged.[7] *See generally SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1341-42 (Fed. Cir. 2001) ("Claims are not correctly construed to cover what was expressly disclaimed." (internal quotation and citation omitted)) (disclaimer in specification). Thus, the Court finds that a "reasonable competitor, reviewing . . . the statements made by the applicant to distinguish the claimed invention from [Chari], would conclude that the claimed invention did not cover a device like [Chari's]," *Springs Window Fashions LP v. Novo Indus., LP*, 323 F.3d 989, 995 (Fed. Cir. 2003)—or, put differently, that the claim term "stand-up toothpaste container" excludes a toothpaste tube that does not retain its shape after discharging the contents of the container.

GSK also argues that the claim should be limited to stand-up toothpaste containers made solely of plastic because that is the only embodiment expressed in the specification. The Federal Circuit, however, has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."

---

[7] As explained in Part II.B below, the evidence is undisputed that GSK's Floss 'N' Cap, while capable of standing up, does not retain its shape after toothpaste is discharged. (Def. SF ¶ 12.) Thus, there is no dispute in the case that would require the Court to interpret the claim term "stand-up toothpaste container" beyond determining that this type of container has been disclaimed.

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). Thus, even though the '706 patent specification describes a "stand-up toothpaste container" as one made of plastic (*see, e.g.*, '706 patent, col. 1, line 38; *id.*, col. 3, lines 26-27), the Court does not read that limitation into the claim, as there is no "clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co.*, 358 F.3d at 913. The claim language itself does not limit "stand-up toothpaste container" to ones made solely of plastic. Instead, the claim describes generally the characteristics of the container, *i.e.* flexible, rather than its chemical (or other) composition. Nor does the prosecution history indicate that a stand-up toothpaste container is made of plastic only. Unlike the language in the prosecution history regarding the physical characteristics of the claimed container, *i.e.* that it does not roll down or lose its shape when toothpaste is squeezed out of it, nothing in the prosecution history indicates that Grussmark needed to distinguish all plastic containers in order to overcome rejection. *See Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997). Thus, the Court finds that the term "stand-up toothpaste container" as used in the '706 patent is not limited to containers made solely of plastic.

B.  Infringement Analysis

Given the Court's construction of "stand-up toothpaste container" as disclaiming a toothpaste container which has walls that do not retain their shape when the toothpaste is discharged, the Court finds that no reasonable jury could conclude that GSK's Floss 'N' Cap infringes the '706 patent. GSK has adduced undisputed evidence that the Floss 'N' Cap product does not retain its shape after discharging its contents. (Def. SF ¶ 12.) Thus, as a matter of law, the Court holds that GSK's product cannot literally infringe the '706 patent. *See, e.g., Southwall*

*Techs.*, 54 F.3d at 1577.

Grussmark argues that, even if the Floss 'N' Cap does not literally infringe, summary judgment is improper because there is a genuine issue of fact as to whether the product is equivalent to a "stand-up toothpaste container" as claimed.[8] "An accused product that does not literally infringe a claim may infringe under the doctrine of equivalents if 'it performs substantially the same function in substantially the same way to obtain the same result.'" *Southwall Techs.*, 54 F.3d at 1570 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). The accused product must meet all limitations of an asserted claim, at least equivalently, in order to infringe under the doctrine of equivalents, which is called the "all limitations" or "all elements" rule. *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *Southwall Techs.*, 54 F.3d at 1570 (citing *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987) (*en banc*)). The doctrine of equivalents is limited by the principle that the doctrine cannot "be used to recapture subject matter that was relinquished during prosecution of the patent." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 & n.8 (Fed. Cir. 1996).

The fact that the Floss 'N' Cap was designed to—and is able to—stand up on a counter when placed on its cap (*see* Pl. SAF ¶¶ 19-23), does not place it within the range of equivalents of a "stand-up toothpaste container" given the express exclusion of containers, like the Floss 'N'

---

[8] In an Order dated July 11, 2002, the Court offered Grussmark an opportunity to file a supplemental brief regarding infringement under the doctrine of equivalents, as he had mistakenly concluded in his response brief that because GSK did not make particular arguments regarding the doctrine of equivalents, the Court could not grant summary judgment on infringement. (D.E. 45.) The parties' arguments concerning the doctrine of equivalents are taken from supplemental papers filed in accordance with that Order. (*See* D.E. 49-53.)

14

Cap, that do not retain their shape. The Federal Circuit teaches that "[a] particular structure can be deemed outside the reach of the doctrine of equivalents because that structure is clearly excluded from the claims whether the exclusion is express or implied." *SciMed Life Sys.*, 242 F.3d at 1345. This principle, which has been called the "specific exclusion" principle, is "akin to the familiar rule that the doctrine of equivalents cannot be employed in a manner that wholly vitiates a claim limitation." *Id.* at 1346 (citing *Warner-Jenkinson*, 520 U.S. at 29-30, and *Athletic Alternatives*, 73 F.3d at 1582). Thus, if the patent states that the claimed device must retain its shape after discharging toothpaste, the patentee cannot assert the patent against a device that does not retain its shape on the grounds of equivalence. "The unavailability of the doctrine of equivalents could be explained either as a product of an impermissible vitiation of the [] claim limitation [requiring the container to retain its shape], or as the product of a clear and binding statement to the public that [containers that do not retain their shapes] are excluded from the protection of the patent." *Id.* at 1347. Here, like the patentee in *SciMed*, Grussmark "specifically identified, criticized, and disclaimed" the type of toothpaste container that does not retain its shape after toothpaste is discharged, *id.* at 1345, and Grussmark "cannot now reclaim the surrendered claim coverage by invoking the doctrine of equivalents." *Gaus v. Conair Corp.*, 363 F.3d 1284, 1291 (Fed. Cir. 2004) (citing *Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1016-17 (Fed. Cir. 1998)). Thus, based on the Court's construction of "stand-up toothpaste container" in claims 1 through 3 and the undisputed evidence before the Court that the Floss 'N' Cap does not retain its shape upon discharge of its contents, the Court finds that no reasonable jury could conclude that GSK's Floss 'N' Cap product infringes the '706 patent, and summary judgment of non-infringement is appropriate.

## IV. Conclusion

For the reasons stated above, GSK's motion for summary judgment is granted.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 8-25-05